UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CEDRIC HOLMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:05CV1032 HEA |
| ) | |
| COCA-COLA ENTERPRISES, INC., ) | |
| d/b/a CENTRAL STATES ) | |
| COCA-COLA BOTTLING COMPANY ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on defendant's Motion for Summary Judgment, [Doc. No. 29]. The issues have been fully briefed. For the reasons set forth below, the motion is granted.

## Introduction

Plaintiff, an African American male, brought this action against defendant alleging racial discrimination, harassment and retaliation in violation of 42 U.S.C. § 1981. He also seeks recovery for emotional distress. Plaintiff claims that he was subject to disparate treatment due to his race in that he was treated more harshly than other non-African American employees.

## Facts and Background

Plaintiff was hired as a custodian maintenance worker in October, 1989. On

May 1, 2001, plaintiff was hired into a position under the jurisdiction of a collective bargaining agreement between Teamsters Local 303 and defendant as a production warehouse worker. Plaintiff was discharged on September 1, 2004.

Mason Hogan became Director of Operations at defendant's Maryland Heights facility (where plaintiff worked) on December 3, 2001. Hogan decided to enforce more strictly defendant's disciplinary policies under Local 303 Work Rules and to eliminate inefficient practices that had been ignored. Hogan had to operate under the Collective Bargaining Agreement and the facility's work rules. The work rules establish a list of disciplinary infractions and set forth a progressive disciplinary process of violations of the three rule categories: A, B and C. Category A rules are the generally less serious types of misconduct. Violations of Category A rules lead to progressively harsher penalties: oral, written, suspension, discharge. Category B rules are more serious. Violation of Category B rules leads to a two-step disciplinary process: Suspension, discharge. Category C rules are the most serious. Violation of Category C rules calls for immediate discharge.

On August 19, 2003, plaintiff was working from 10:00 p.m. until 6:30 a.m. as a depalletizer. He was responsible for operating the machine that removes the empty cans from pallets and puts them onto the conveyor system that leads to the filler where they are filled with defendant's product. Production Supervisor Bob

Goskie went to plaintiff's work station because the line was down and observed plaintiff sleeping. Plaintiff had placed paper towels on his arm on which his head rested. Plaintiff was suspended for ten days.

Plaintiff filed two grievances over this suspension. Plaintiff claimed he had chronic fatigue syndrome. He produced a doctor's slip dated June 20, 1992. Plaintiff admitted that he may have "dozed off." Plaintiff's union ultimately dropped the grievances and the suspension stood. Plaintiff received the most severe suspension because of defendant's belief that plaintiff's sleeping was intentional.

On January 9, 2004, plaintiff was working the third shift sanitation (clean up) from 1:00 a.m. to 9:30 a.m. Jerry Myers, a supervisor, could not find plaintiff.. Myers paged plaintiff over the intercom. Plaintiff did not respond to the page. Myers sent Greg Mason and Lewis Harty to look for him. Plaintiff was found sitting in his vehicle in the parking lot. Plaintiff contended he was taking his lunch break. Defendant reviewed a video recorded tape of defendant's break room for that day. Plaintiff was observed on the tape for a little over two hours. Plaintiff's allowed break and lunch time was a total of 50 minutes.

Plaintiff was written up for a C-14 violation, "walking off the job and leaving the premises without notifying a supervisor." This violation was an immediately dischargeable offense. Plaintiff was suspended immediately pending review. The

Union filed a grievance contending that the penalty was too severe. Defendant agreed to reduce this violation to a B-12 violation, but since this was the second B violation which called for a suspension, and since it was within 9 months of the first B violation, the decision to discharge plaintiff was made. Again, the union argued that the penalty was too severe. Thereafter, defendant agreed to and entered into a "Last Clear Chance Agreement" with plaintiff and the union. Plaintiff got his job back as of March 15, 2004. Under the Agreement, any further violations within specified time limits would result in discharge.

On August 4, 2004, plaintiff was disciplined for failing to close a drain valve on a warmer after having sanitized it. Some of the water drained out and the line had to be shut down for 39 minutes while the problem was investigated and corrected. Plaintiff received an A-16 violation for poor work performance. Since this violated the Last Clear Chance Agreement, plaintiff was discharged. The union grieved on plaintiff's behalf. The union dropped the grievance after concluding it lacked merit.

Plaintiff's complaint alleges that he was retaliated against following his having talked to the EEOC in October, 2003. Plaintiff did not file a charge and admits that the EEOC did not conduct an investigation. The EEOC agreed to keep his complaint confidential, and defendant was never served with a charge relating to

an EEOC charge at or around October 20, 2003. Plaintiff claims that he was retaliated against when he was sent home on October 30, 2003 and told he had to have medical clearance to resume work.

Plaintiff also claims that he was harassed by being asked to assist co-workers with their duties and to separate recyclable from non-recyclable trash. Further, plaintiff claims that Mason harassed him by showing him pictures of his work area and telling him that his work area was a mess and he needed to get it together.

## **Summary Judgment Standard**

Summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *Canady v. Wal-Mart Stores, Inc,*, 440 F.3d 1031, 1034 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47

F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003).

In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Canady*, 440 F.3d at 1034. The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment will be granted on a claim "if any essential element of [a plaintiff's] prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Turner v. Gonzales*, 421 F.3d 688, 694 (8th Cir. 2005).

## Discussion

### Plaintiff's Discharge and Discrimination

Plaintiff has presented no direct evidence of discrimination regarding his claims, therefore, under § 1981, the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) applies.

> The *McDonnell Douglas* burden-shifting framework applies to motions for summary judgment in cases arising under § 1981 where there is no direct evidence of discrimination. *Roxas v. Presentation College,* 90 F.3d 310, 315 (8th Cir.1996). Under this framework, the claimant first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the challenged action; and if the defendant proffers such a reason, the burden of production shifts back to the claimant to establish that the proffered reason is a mere pretext for discriminatory animus. *Id.* at 315-16. "A plaintiff establishes a prima facie case under § 1981 by showing (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts)." *Daniels v. Dillard's, Inc.,* 373 F.3d 885, 887 (8th Cir.2004). One way for the claimant to establish the second element, the defendant's intent to discriminate, is to show that he was treated

differently from similarly situated nonmembers of the protected class. *Turner v. Gonzales,* 421 F.3d 688, 694 (8th Cir.2005).

*Harris v. Hays* 452 F.3d 714, 717 -719 (8th Cir. 2006).

There is no evidence in the record before the Court to establish a prima facie case because plaintiff has produced nothing to establish that defendant was likely motivated by a discriminatory reason or that defendant's explanation was unworthy of credence.[1] *Rose-Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1108 (8th Cir.1998). Defendant has presented evidence which establishes that it believed plaintiff was intentionally sleeping on the job, that he exceeded his allowed break time and that he left the drain valve open, thereby violating defendant's rules.

Plaintiff has presented a response, to which he has sworn to be accurate to the best of his knowledge, which sets forth a self serving "explanation" of why he should not have been disciplined or discharged. Plaintiff's argument, however, is insufficient to establish that defendant's articulated reasons for discharge were not legitimate.

Even assuming all of the disputed facts are material, and that plaintiff has established a prima facie case, plaintiff's claim still must fail. Plaintiff has not generated a genuine issue for trial on the "ultimate question of discrimination *vel*

---

[1] Defendant's motivation also establishes its legitimate nondiscriminatory reason for plaintiff's discharge, *i.e.,* defendant's belief that plaintiff was not following its rules for employees.

*non,*" *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983).

Defendant asserts that it discharged plaintiff because of its reasonable belief that he intended to sleep on the job because of his "preparation" in placing paper towels over his arm on which to rest his head; that he exceeded his allowed break time and was absent from the plant; and that he left the valve open on the drain causing the line to shut down. These beliefs, whether true are not, are legitimate reasons for defendant's decision to terminate plaintiff's employment. "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Riser v. Target*,___ F.3d ___, 2006 WL 2370475 (8th Cir. August 17, 2006).

Furthermore, plaintiff is unable to establish that he was treated more harshly in his discharge. Plaintiff has failed to present evidence that similarly-situated employees outside his protected class in the same circumstance were treated less harshly. He fails to show that he was similarly situated to any other employees receiving discipline. In order to establish this element, plaintiff must show that he and the employees outside of his protected group were similarly situated in all

relevant respects. *Rodgers v, U.S. Bank, N.A.,* 417 F.3d 845, 853 (8th Cir. 2005). "We have equated the phrase 'similarly situated in all relevant respects' with the statement that '[e]mployees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways.' " *Id.* at 856 (Colloton, J., concurring) (quoting *Wheeler v. Aventis Pharm.,* 360 F.3d 853, 858 (8th Cir.2004)) (alteration in original). Plaintiff fails to present admissible evidence that other employees were similarly situated in all *relevant* respects. There is no evidence of any other employees with a Last Clear Chance Agreement detailing when termination might occur, that were treated more favorably by defendant. As such, plaintiff's discrimination claim must fail. *Riser*,___ F.3d ___, 2006 WL 2370475 at * 4.

**<u>Retaliation</u>**

Plaintiff also claims that he was retaliated against in being sent home on October 30, 2003 because of he filed a complaint with the EEOC on October 3, 2003. The record clearly establishes that the information plaintiff submitted was not filed as a charge, was not sent to defendant as a charge of discrimination and that defendant had no knowledge of the complaint having been submitted to the EEOC at the time he was sent home on October 20, 2003. As such, defendant could not have retaliated against plaintiff because of his complaint to the EEOC.

**Racial Harassment**

None of plaintiff's claims of harassment rise to the level required. Plaintiff complains that he was sent home and could not return without a medical authorization. He also claims that he was criticized for sweeping too slowly and was shown pictures of his work area and told to get it together. He further claims that he had to separate recyclable trash from non-recyclable trash. As defendant correctly argues, none of the acts alleged to be harassment occurred frequently, nor did they affect plaintiff's work environment. In order to maintain a claim for harassment, plaintiff must establish that he suffered some material adverse change to the terms and conditions of his employment. *Meyers v. Nebraska Health and Human Serv.*, 324 F.3d 655, 660 (8th Cir. 2003). Furthermore, "[a] materially adverse action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' There must be a material change in employment status-a reduction in title, salary, or benefits." *Wenzel v. Missouri-American Water Co.,* 404 F.3d 1038, 1042 (8th Cir.2005) (quoting *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994)) (internal citation omitted)." *Box v. Principi,* 442 F.3d 692, 696 (8th Cir. 2006). None of the complained of actions establish such a change.

Moreover, plaintiff has produced absolutely no evidence that any of the above

detailed acts were in any way racially related.  Plaintiff's claim of racial harassment is wholly unsupported by this record.

**Emotional Distress Claim**

To recover for intentional infliction of emotional distress, plaintiff must show (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; and (3) the defendant's conduct caused extreme emotional distress resulting in bodily harm.  *Thomas v. Special Olympics Mo., Inc.,* 31 S.W.3d 442, 446 (Mo.App.2000).  Additionally, the plaintiff must establish that the sole intent in acting was to cause emotional distress.  *Id.*
*Central Missouri Elec. Co-op. v. Balke*, 119 S.W.3d 627, 636 (Mo.App. 2003).  The record clearly establishes that none of the actions taken by defendant regarding plaintiff's discipline and ultimate discharge satisfy any of the required elements of a claim for emotional distress.  Defendant's actions clearly fall within the realm of reasonable employment practice.  Defendant is therefore entitled to judgment as a matter of law on plaintiff's emotional distress claim.

**New claims**

The Court agrees with defendant that plaintiff's attempts to state new claims in his response to the motion for summary judgment is not appropriate.  Plaintiff

cannot, at this stage of the litigation seek recovery for actions not alleged in his complaint. The Court, therefore will not address plaintiff's claims of disability discrimination, wrongful termination or breach of contract.

## Conclusion

As discussed herein, plaintiff's claims are not supported by the record before the Court. Plaintiff has failed to establish any genuine issues of material fact such that would allow him to recover against defendant. As such, defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment, [Doc. No. 29], is granted.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 23rd day of August, 2006.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE